UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

MICHAEL CHARLES GARRETT,

                    Plaintiff,              10 Civ. 2689 (JGK)

          - against -                       MEMORANDUM ORDER AND
                                                   OPINION
THE CITY OF NEW YORK, THE NEW YORK
POLICE DEPARTMENT, and POLICE
DETECTIVE MICHAEL PUMA

                    Defendants.
─────────────────────────────────────

JOHN G. KOELTL, District Judge:

        The plaintiff, Michael Charles Garrett, filed this action

pursuant to 42 U.S.C. § 1983, alleging that the defendant,

Detective Michael Puma, (the "defendant" or "Detective Puma")

violated the plaintiff's rights under the Fourth, Fifth, Sixth,

Eighth and Fourteenth Amendments.  In particular, the plaintiff

alleges that the defendant is liable for false arrest and

malicious prosecution.  The defendant moves for summary judgment

pursuant to Federal Rule of Civil Procedure 56, arguing that all

of the plaintiff's claims are without merit.[1]

---

[1] The plaintiff has withdrawn all federal and state claims against the City of
New York and the New York City Police Department, and all state claims
against Detective Michael Puma. (Order, November 12, 2010, Docket No. 19.)
Therefore, the plaintiff alleges only federal claims against Detective Puma,
who is the only remaining defendant.

I.

The standards to be applied to a motion for summary judgment are well established.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists . . . ."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  In determining whether that burden has been met, the Court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "It is not the province of the court itself to decide what inferences should be drawn . . . .; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper . . . ."  Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000); see also Bank of Am., N.A. v. Vergest Ltd., No. 10 Civ. 4682, 2011 WL 92751, at *1 (S.D.N.Y. Jan. 11, 2011).

2

II.

The following facts are undisputed unless otherwise noted.

On the morning of October 31, 2008, an unknown perpetrator stabbed William Won, the victim, near the intersection of Sixth Avenue and Thirty-Second Street in New York City. (Def.'s 56.1 Stmt. ¶ 2; Pl.'s Resp. to Def.'s 56.1 Stmt. (Pl.'s 56.1 Resp.) ¶ 2.) In response to a 911 call placed by an observer, New York City patrol officers and emergency medical technicians arrived at the scene, and transported the victim to Bellevue Hospital. (Def.'s 56.1 Stmt. ¶¶ 3-4; Pl.'s 56.1 Resp. ¶¶ 3-4.) The victim sustained loss of blood and permanent injuries, and was hospitalized for a week following the incident. (Def.'s 56.1 Stmt. ¶¶ 5-6; Pl.'s 56.1 Resp. ¶¶ 5-6; Scharfstein Decl. Ex. D ("Won Dep."), at 25:2-26:14.)

Night Watch detectives, crime scene analysts, and police officers, including Police Officer Robert Groppe, investigated the scene of the crime. (Def.'s 56.1 Stmt. ¶¶ 7-8; Pl.'s 56.1 Resp. ¶¶ 7-8.) Police officers canvassed the surrounding area for cameras, and Officer Groppe recovered and invoiced a Budweiser beer bottle. (Def.'s 56.1 Stmt. ¶¶ 9-10; Pl.'s 56.1 Resp. ¶¶ 9-10; Scharfstein Decl. Ex. G.)

The case was assigned for investigation to the defendant, Detective Puma, when he arrived at work at 8:00 a.m. on October 31, 2008. (Def.'s 56.1 Stmt. ¶ 11; Pl.'s 56.1 Resp. ¶ 11.)

With the assistance of other detectives, the defendant investigated the case and interviewed the complaining witness. (Def.'s 56.1 Stmt. ¶ 12; Pl.'s 56.1 Resp. ¶ 12.)  The defendant canvassed the area surrounding the scene of the crime, identified cameras that may have captured the incident, and reviewed film from these cameras.  (Def.'s 56.1 Stmt. ¶¶ 14-15; Pl.'s 56.1 Resp. ¶¶ 14-15.)  The defendant contacted the Technical Assistance and Response Unit ("TARU") and the Pattern Identification Module System ("PIMS") to help him preserve the film, and to determine whether the film had captured the face of the perpetrator and, if so, whether the film could be enhanced to render visible the face of the perpetrator.  (Def.'s 56.1 Stmt. ¶ 16; Pl.'s 56.1 Resp. ¶ 16.)  There is no evidence that TARU and PIMS provided any useful results.  (Scharfstein Decl. Ex. M at NYC 000183, NYC 000184.)

On December 12, 2008, because the investigation did not initially lead to the identification or arrest of any suspect, the defendant, with the approval of a supervisor, closed the case.  (Def.'s 56.1 Stmt. ¶¶ 18-19; Pl.'s 56.1 Resp. ¶¶ 18-19.) However, on January 5, 2009, the plaintiff's DNA was recovered through DNA analysis from the beer bottle that Officer Groppe retrieved from the scene of the crime.  (Def.'s 56.1 Stmt. ¶ 20; Pl.'s 56.1 Resp. ¶ 20.)  As a result, the case was reopened. (Def.'s 56.1 Stmt. ¶¶ 21-22; Pl.'s 56.1 Resp. ¶¶ 21-22.)

On January 15, 2009, the victim viewed a photo array. (Def.'s 56.1 Stmt. ¶ 27; Pl.'s 56.1 Resp. ¶ 27.)  The victim selected the plaintiff, who appeared at position number two in the photo array, stating that the plaintiff "looked most familiar" to him of the men depicted in the photo array. (Def.'s 56.1 Stmt. ¶¶ 27-28; Pl.'s 56.1 Resp. ¶¶ 27-28; Won Dep. at 39:5-10; see Scharfstein Decl. Ex. K.)  The photo array consisted of pictures of the plaintiff and five other individuals.  (Def.'s 56.1 Stmt. ¶ 24; Pl.'s 56.1 Resp. ¶ 24.) The defendant created the photo array by entering the plaintiff's information in a computer program called "Photo Manager," which selected other photographs to be included in the photo array.  (Scharfstein Decl. Ex. C. ("Puma Dep."), at (150:19-151:22.)  After Photo Manager generated the photo array, the defendant examined the photo array to ensure that the other participants looked similar to the plaintiff, and found that they did.  (Puma Dep. at 151:19-152:22.)

Following the photo array, the defendant brought the plaintiff into custody.  (Def.'s 56.1 Stmt. ¶ 32; Pl.'s 56.1 Resp. ¶ 32; Puma Dep. at 113:13-19.)  The victim subsequently viewed a line-up in which the plaintiff appeared at position number two.  (Def.'s 56.1 Stmt. ¶¶ 33, 35; Pl.'s 56.1 Resp. ¶¶ 33, 35.)  The victim stated that the plaintiff was the only participant in the line-up who "looked familiar" to him, and

5

identified the plaintiff as the person who had stabbed him. (Won Dep. at 21:18-22:3, 46:23-47:12, 53:11-18.)  After the victim identified the plaintiff, the defendant prepared the arrest processing paperwork and the plaintiff was arrested for Assault in the Second Degree (N.Y. Penal Law § 120.05[2]). (Def.'s 56.1 Stmt. ¶¶ 38-39; Pl.'s 56.1 Resp. ¶¶ 38-39.)  After the plaintiff was provided with Miranda warnings, the defendant alleges that the plaintiff made an oral statement to the defendant indicating that he witnessed the victim being stabbed and that he did not drink alcohol.  (Def.'s 56.1 Stmt. ¶¶ 40-42; Pl.'s 56.1 Resp. ¶¶ 40-41; Scharfstein Decl. Ex. U.)  The plaintiff disputes that he made such a statement to the defendant and argues that Detective Puma fabricated the statement in order to destroy the plaintiff's credibility. (Pl.'s 56.1 Resp. ¶ 42; Parker Decl. Ex. 1 ("Garrett Aff."), at ¶¶ 27-30.)

The defendant testified that he gave all of the paperwork he had on the case to the District Attorney's office.  (Puma Dep. at 168:23-169:3.)  The paperwork included, among other things, a DD-5 report indicating that an Argus (NYPD) camera had recorded the incident and that "there [was] a chance that the [perpetrator's] face was captured."  (Scharfstein Decl. Exs. J & N at NYC 000111.)  In addition, the existence of cameras in the vicinity of the incident was referenced in a complaint report, a

police department memorandum dated October 31, 2008, and other DD-5 reports dated October 31, 2008, all of which were maintained in the District Attorney's office file. (Def.'s 56.1 Stmt. ¶ 48; Pl.'s 56.1 Resp. ¶ 48; Scharfstein Decl. Exs. E, F, J & N at 000118.)

On January 22, 2009, the defendant signed a criminal court affidavit, prepared by Assistant District Attorney ("ADA") Rena Paul, charging the plaintiff with Assault in the First Degree and Assault in the Second Degree (N.Y. Penal Law §§ 120.10[1], 120.05[2]) and indicating that the victim had informed the defendant that the plaintiff had stabbed the victim, causing the victim pain and injury. (Def.'s 56.1 Stmt. ¶¶ 49-50; Pl.'s 56.1 Resp. ¶¶ 49-50.) The plaintiff was arraigned on January 23, 2009, at which time the state court set bail at $100,000. (Def.'s 56.1 Stmt. ¶¶ 51-52; Pl.'s 56.1 Resp. ¶¶ 51-52.)

ADA Rena Paul spoke with the victim several times on the telephone and met with him in person before the grand jury proceeding. (Def.'s 56.1 Stmt. ¶¶ 53-54; Pl.'s 56.1 Resp. ¶¶ 53-54; Won Dep. at 18:6-19:15, 53:24-56:13.) On January 28, 2009, ADA Rena Paul presented the case to the grand jury. (Def.'s 56.1 Stmt. ¶ 55; Pl.'s 56.1 Resp. ¶ 55.) The plaintiff, the defendant, and the victim each testified before the grand jury. (Def.'s 56.1 Stmt. ¶ 56; Pl.'s 56.1 Resp. ¶ 56.) The grand jury returned an indictment against the plaintiff, which

included one count of Assault in the First Degree (New York
Penal Law § 120.10[1]).  (Def.'s 56.1 Stmt. ¶ 57; Pl.'s 56.1
Resp. ¶ 57; Scharfstein Decl. Ex. T.)

     The defendant contends that the plaintiff filed multiple
motions and grievance papers with the state court following his
indictment, but did not mention the video film or the presence
of cameras at the scene of the crime in any of his submissions.
(Def.'s 56.1 Stmt. ¶¶ 58-64, 66.)  The plaintiff responds that
he was aware of the existence of video cameras at the scene of
the crime and believed there was a video of the incident, and
that he was not required to mention the existence of video
cameras or the video film in his court submissions.  (Pl.'s 56.1
Resp. ¶¶ 62, 66.)  In the grievance the plaintiff submitted to
the state court, he stated that there were transit workers at
the scene of the crime who might have relevant information.
(Def.'s 56.1 Stmt. ¶ 65; Pl.'s 56.1 Resp. ¶ 65.)

     On February 25, 2009, the plaintiff was released from
custody on his own recognizance.  (Scharfstein Decl. Ex. R at
000032.)  On September 16, 2009, the indictment against the
plaintiff was dismissed on speedy trial grounds.  (Def.'s 56.1
Stmt. ¶ 67; Pl.'s 56.1 Resp. ¶ 67; Scharfstein Decl. Ex. Z at
NYC 000159; see N.Y. Crim. Proc. Law § 30.30.)[2]

---

[2] The plaintiff submits additional facts which he claims support his argument
that there are disputed material facts.  The plaintiff's additional statement
of facts is not authorized, and is relevant only to the extent that the

On March 25, 2010, the plaintiff filed suit in this Court against the defendant Detective Puma, the City of New York, and the New York City Police Department, asserting claims under 28 U.S.C. § 1983 for false arrest, malicious prosecution, and other deprivations of his constitutional rights.  The plaintiff subsequently withdrew his claims against the City and the Police Department.  (Order, November 10, 2010, Docket No. 19.) Detective Puma, the remaining defendant, now moves for summary judgment.

III.

The defendant argues that the plaintiff's false arrest claim under 42 U.S.C. § 1983 should be dismissed because the defendant had probable cause to arrest the plaintiff, or, in the alternative, had arguable probable cause and is therefore entitled to qualified immunity.  The plaintiff contends that the defendant did not have probable cause and is not entitled to qualified immunity.

"In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases); see also, e.g., Caceres

---

plaintiff submitted the facts in order to direct the court's attention to portions of the record he believes relevant to the motion for summary judgment.  The defendant has responded to the plaintiff's statement of facts, although he was not required to do so.  The Court has reviewed those facts in the record cited by the plaintiff and has therefore considered them in determining whether the defendant is entitled to summary judgment.

v. Port Authority of N.Y. and N.J., 646 F. Supp. 2d 412, 420-21
(S.D.N.Y. 2009), aff'd in relevant part, 631 F.3d 620, 623 (2d
Cir. 2011); Munoz v. City of New York, No. 4 Civ. 1105, 2008 WL
464236, at *4 (S.D.N.Y. Feb. 20, 2008) (applying state law to
false arrest claim under § 1983 based on "Fourth Amendment right
to be free from unreasonable seizures, including arrest without
probable cause"). "Under New York law, a plaintiff claiming
false arrest must show, inter alia, that the defendant
intentionally confined him without his consent and without
justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.
1996).

Whether an arrest is an illegal false arrest depends upon
whether there was probable cause to arrest.  Probable cause is
an absolute defense to a false arrest claim.  See Covington v.
City of New York, 171 F.3d 117, 122 (2d Cir. 1999).  An officer
has probable cause for an arrest when at the time of the arrest
"the facts and circumstances within their knowledge and of which
they had reasonably trustworthy information were sufficient to
warrant a prudent man in believing that [the suspect] had
committed or was committing an offense." Brewster v. Nassau
County, 349 F. Supp. 2d 540, 551 (E.D.N.Y. 2004) (quoting Beck
v. Ohio, 379 U.S. 89, 91 (1964)).  Once the fact of a
warrantless arrest has been established, the burden is on the
arresting officer to prove probable cause for the arrest by a

preponderance of the evidence.  See Wilder v. Village of
Amityville, 288 F. Supp. 2d 341, 344-45 (E.D.N.Y. 2003); see
also Caceres, 646 F. Supp. 2d at 421.

In this case, Detective Puma only arrested the plaintiff
after he received DNA evidence indicating that the plaintiff was
present at the scene of the crime, and the victim identified the
plaintiff in a photo array and in a line-up.  The fact that the
victim identified the plaintiff in a photo array and a line-up
gave Detective Puma probable cause to arrest the plaintiff.
Rush v. Astacio, 159 F.3d 1348, 1998 WL 480751, at *1 (2d Cir.
1998) (table) ("[I]t cannot be doubted that the actual
identification of appellant by the victim through photographs
goes beyond mere suspicion and would . . . be 'sufficient to
warrant a prudent man in believing that the [appellant] had
committed . . . an offense.'" (alterations in original) (quoting
Mayer v. Moeykens, 494 F.2d 855, 858 n.2 (2d Cir. 1974))).  The
plaintiff argues that the photo array in which the victim
identified the plaintiff was suggestive and therefore unreliable
based on testimony by the victim in response to questioning
about the photo array.  (Pl.'s Mem. at 16-17.)  The victim
testified as follows:

Q: Do you see that there is an item Photo Selected on
that page?

A: Yes.

Q: There is a handwritten 2 next to it?

A: Yes.

Q: Was that filled in when you viewed the photo array?

A: Yes, I think so.  I'm pretty sure it was; because all I had to do was initial it.

Q: So that is not your handwriting, the "2"?

A: Actually, I think that is.

. . .

A: It could be mine, it looks like mine, but . . .

. . .

Q: But my question is: Was it filled in before this document was presented to you?

A: No, . . . everything on the sheet was blank when [Detective Puma] showed it to me at first.

Q: Okay.  So . . . was the date filled in when you first saw it?

. . .

A: Sure. I want to say, I can't be sure if he put the date in afterwards, but I know I chose 2 and I initialed it . . . .

(Won Dep. at 35:13-36:24.)  The victim also testified that, although Detective Puma and other officers were in the room while he viewed the photo array, Detective Puma did not communicate with him during the photo array, nor did any other officers.  (Won Dep. at 38:1-39:10.)

The plaintiff argues that, based on the testimony above, there is reason to believe the defendant had already indicated

12

which of the six photos was the perpetrator prior to giving the
victim the photo array to examine.  The victim's testimony does
not create such an inference.  The testimony suggests that the
victim was confused, and having difficulty remembering certain
details of the photo array, which occurred almost two years
before the victim testified at his deposition in this case.
Ultimately, the victim explicitly stated that it was he, not
Detective Puma, who selected the plaintiff in the photo array,
and indicated that there was nothing on the photo array when he
received it that would have influenced his decision.

The plaintiff also emphasizes that the victim testified
that Detective Puma told him that the police "thought they had
the person who stabbed [him]," which the plaintiff argues was
"highly suggestive."  (Won Dep. at 27:21-22; Pl.'s Mem. at 17.)
Although it is not ideal for a police officer to inform a
witness or victim that the police "thought they had" the
perpetrator of the crime when calling the witness or victim to
appear for a photo array or a line-up, such conduct does not
make the subsequent photo array or line-up unduly suggestive.
See Jenkins v. City of New York, 478 F.3d 76, 92-93 & n.18 (2d
Cir. 2007) (finding that a line-up was not unduly suggestive,
and probable cause was not negated, when the police told a
robbery victim that they had "caught the person who robbed her"
and the victim testified that she "felt confident in identifying

Jenkins in the lineup because the police 'said they caught the person . . . with another victim's stuff in the car that I described.'") (collecting cases).  Here, the fact that the defendant informed the victim that the police "thought they had the person who stabbed" the victim was not impermissibly suggestive and did not negate the existence of probable cause.

Because there is no basis to find that the photo array was impermissibly suggestive, and the plaintiff does not allege that the line-up was impermissibly suggestive, and there is no basis to find that it was impermissibly suggestive, the defendant had probable cause to arrest the plaintiff based on the two identifications of the plaintiff by the victim.  The plaintiff attempts to undermine the probable cause established by the identifications made by the victim by arguing that eyewitnesses, who the plaintiff alleges had more time than the victim to view the perpetrator, described the perpetrator as being approximately twenty years younger than the plaintiff.  (Pl.'s Opp. Mem. at 7-8; see Scharfstein Decl. Ex. M at 000162, 000169.)  It is not clear that eyewitnesses would be better able to identify the perpetrator than the victim, and differences in the description of the age of a perpetrator are not dispositive. After the victim identified the plaintiff as the perpetrator, the defendant had probable cause to arrest the plaintiff and was under no obligation to investigate further based solely on the

14

eyewitness statements. <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124
F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a
reasonable basis for believing there is probable cause, he is
not required to explore and eliminate every theoretically
plausible claim of innocence before making an arrest.").

The plaintiff also alleges that the video of the incident
exonerated him. (Pl.'s Opp. Mem. at 7-8.)  In particular, the
plaintiff claims that the video of the incident shows him in a
white vest, arriving after the stabbing occurred, and that
Detective Puma had reason to know the plaintiff was not the
perpetrator because the plaintiff was wearing the same white
vest when Detective Puma arrested him. (Pl.'s Opp. Mem. at 8;
Garrett Aff. ¶¶ 16-17.)  The defendant disputes that the video
clearly shows that the plaintiff was not the perpetrator.
(Def.'s Reply Mem. at 5.)  Neither party submitted the video to
the Court until the Court requested it.  The video could support
the plaintiff's version of events but it is hardly dispositive.
The faces on the video are not clear and the plaintiff's version
of events requires that his identification of himself as a
person who arrived on the scene after the assault be accepted.
It is worth noting that after seeing the video, the victim
testified that it was blurry and that he could not say without a
doubt, based on the video, whether the plaintiff was or was not
the perpetrator.  (Scharfstein Reply Decl. Ex. A ("Won Dep. 2"),

at 100:8-101:17.)  It is not disputed that Detective Puma attempted to enhance the video, and the record reflects that his attempt was unsuccessful.  (Scharfstein Decl. Ex. M at NYC 000183, NYC 000184.)

Although the exculpatory value of the video is disputed by the parties, the defendant has established that he possessed DNA evidence linking the plaintiff to the crime scene, and that the victim twice identified the plaintiff as the perpetrator.  While the plaintiff had a contrary explanation for his presence at the scene of the assault, the defendant was not required to accept his explanation.  Given these facts, the defendant had probable cause to arrest the plaintiff based on the identification of the plaintiff by the victim.

The defendant also had arguable probable cause and is therefore entitled to qualified immunity.  Officers have arguable probable cause and are entitled to qualified immunity on a claim of false arrest "if it was objectively reasonable for the officer to believe that probable cause existed, or if officers of reasonable competence could disagree on whether the probable cause test was met." Caceres, 631 F.3d at 622 (2d Cir. 2011) (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)) (internal quotation marks omitted); Carthew v. County of Suffolk, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007)).

In this case, the plaintiff was identified by the victim in a photo array and a line-up, and there was DNA evidence establishing that the plaintiff was present at the scene of the crime.  The identification of the plaintiff by the victim made it objectively reasonable for Detective Puma to believe there was probable cause, and, therefore, Detective Puma is entitled to qualified immunity.

Because Detective Puma had probable cause and is entitled to qualified immunity, the defendant's motion for summary judgment is **granted** as to the plaintiff's claim of false arrest.

IV.

To sustain a § 1983 claim based on malicious prosecution, a plaintiff must demonstrate a seizure amounting to a Fourth Amendment violation and establish the elements of a malicious prosecution claim under state law.  See Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010); see also Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997).  In New York, to make out a claim for malicious prosecution, a plaintiff must show "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions." Manganiello, 612 F.3d at 161 (internal quotation marks omitted); see also Spencer v.

17

Ellsworth, No. 09 Civ. 3773, 2011 WL 1775963, at *4 (S.D.N.Y. May 10, 2011.)

Probable cause is a complete defense to a claim of malicious prosecution, See Manganiello, 612 F.3d at 161-62 (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)), and a grand jury indictment creates a presumption of probable cause.  See, e.g., Donnelly v. Morace, 556 N.Y.S.2d 605, 606 (App. Div. 1990) ("[A] presumption that there was probable cause for the prosecution . . . exists when the plaintiff was indicted or arrested by warrant."); Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004).  "The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith."  Rothstein, 373 F.3d at 283 (quoting Colon v. City of New York, 455 N.E.2d 1248, 1250-51 (N.Y. 1983)); see also Alcantara v. City of New York, 646 F. Supp. 2d 449, 460 (S.D.N.Y. 2009).  Thus, a malicious prosecution claim after an indictment will only succeed if the plaintiff can "establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."  Rothstein, 373 F.3d at 283 (quoting Colon, 455 N.E.2d at 1250-51).  The plaintiff must

18

"establish what occurred in the grand jury and . . . that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." Id. at 284 (internal quotation marks and citations omitted); see also Spencer, 2011 WL 1775963, at *4.

In this case, there is an indictment by the grand jury that creates a presumption of probable cause. The plaintiff contends that the indictment does not create probable cause because it was dismissed when the ADA decided not to pursue the case after viewing the video. However, the indictment was dismissed on speedy trial grounds. (Scharfstein Decl. Ex. Z at NYC 000159.) The fact that an indictment was subsequently dismissed on procedural grounds does not negate the presumption of probable cause. Cornell v. Kapral, No. 09 Civ. 0387, 2011 WL 94063, at *9, & n.9 (N.D.N.Y. Jan. 11, 2011) (collecting cases). The plaintiff contends that although the record shows that the indictment was dismissed on speedy trial grounds, it was in fact a result of the ADA's realization, after viewing the video, that the plaintiff was not the perpetrator. There is no evidence in the record to support this contention, and therefore no basis to find that the indictment was dismissed for any reason other than the failure to comply with New York speedy trial requirements.

The plaintiff also contends that the presumption of probable cause is rebutted because the defendant allegedly: (1)

fabricated a statement by the plaintiff saying that he did not drink alcohol; (2) failed to inquire further once the plaintiff revealed that there was relevant information on the video; (3) ignored the age discrepancy between the plaintiff and the description of the perpetrator by eyewitnesses; (4) conducted a suggestive identification procedure; (5) withheld the exculpatory video; and (6) led the District Attorney's office to believe the video was of no use.  (Pl.'s Opp. Mem. at 10.)

None of the plaintiff's allegations rebut the presumption of probable cause created by the indictment.  The plaintiff offers no evidence other than his own contention that the defendant fabricated his statement, or that the defendant withheld the video or misled the District Attorney's Office about the value of the video.  Moreover, the plaintiff's oral statement as reported by Detective Puma was primarily exculpatory, and the only alleged inconsistency is that the plaintiff claims he never stated that he did not drink alcohol. In addition, the record indicates that because of the quality of the video and the inability to enhance it, the video was blurry and therefore did not necessarily have exculpatory value.  The defendant was not required to inquire further about the evidence on the video based on the plaintiff's contentions, nor was he required to address any discrepancy between the plaintiff and the description of the perpetrator by eyewitnesses after the

plaintiff was identified by the victim.  See Ricciuti, 124 F.3d
at 128.  Finally, as discussed at length above, the plaintiff
has failed to establish that the photo array was unduly
suggestive, and does not claim that the subsequent line-up was
unduly suggestive.  Because the plaintiff has not established
that the indictment was produced by fraud, perjury, the
suppression of evidence, or any bad faith on the part of the
defendant, there is a presumption of probable cause that defeats
the plaintiff's claim of malicious prosecution.

In any event, the defendant had probable cause to arrest
the plaintiff and assist the District Attorney's Office in its
effort to prosecute the plaintiff based on the DNA evidence that
the plaintiff was present at the scene of the incident and on
the two identifications of the plaintiff by the victim.  As
discussed above, the plaintiff's efforts to undermine probable
cause fail because they are unsupported by the record and
without merit.  Because the defendant had probable cause to
arrest the plaintiff, the plaintiff's claim of malicious
prosecution is without merit and must be dismissed.

The defendant is also entitled to qualified immunity from
the plaintiff's claim of malicious prosecution.  "While the
right to be free from malicious prosecution is a clearly
established right, defendants may nevertheless enjoy qualified
immunity if it was objectively reasonable for them to believe

that their actions did not violate that right." Bonide
Products, Inc. v. Cahill, 223 F.3d 141, 145 (2d Cir. 2000) (per
curiam) (internal quotation marks and alterations omitted).
"Normally, it is only the 'plainly incompetent or those who
knowingly violate the law'-those who are not worthy of the
mantle of office-who are precluded from claiming the protection
of qualified immunity." Moore v. Andreno, 505 F.3d 203, 214 (2d
Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986));
see also Alcantra, 646 F. Supp. 2d at 462.  Because the
defendant had probable cause, or, at a minimum, arguable
probable cause, it was objectively reasonable for him to believe
that his actions did not violate the plaintiff's right to be
free from malicious prosecution.  Therefore, the defendant is
entitled to qualified immunity.

The plaintiff has not rebutted the presumption of probable
cause created by the indictment, and, in any case, the defendant
had probable cause to arrest the plaintiff and to assist the
District Attorney's Office in prosecuting the plaintiff.  The
defendant is also entitled to qualified immunity.  The
defendant's motion for summary judgment is therefore **granted** as
to the plaintiff's claim of malicious prosecution.

In addition to the plaintiff's claims of false arrest and
malicious prosecution pursuant to the Fourth Amendment, the
complaint alleges violations of the Fifth, Sixth, Eighth, and

Fourteenth Amendments.  However, the plaintiff has not alleged any facts or particular claims pursuant to those alleged violations.  The record does not reflect any potential constitutional violations beyond the false arrest and malicious prosecution claims discussed above, and the plaintiff has not responded to the defendant's argument that, to the extent the plaintiff has additional constitutional claims, they should be dismissed.  Any remaining claims are therefore **dismissed**.

### CONCLUSION

The Court has carefully considered all of the parties' arguments.  To the extent they are not dealt with above, they are either moot or without merit.  For the reasons stated above, the defendant's motion for summary judgment is **granted**.  The Clerk is directed to enter judgment dismissing the Complaint and closing this case.  The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           September 26, 2011

_____
             John G. Koeltl
      United States District Judge